UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| EVAN SHADLE, | Case No. EDCV 18-00806-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| ANDREW M. SAUL, Commissioner of the Social Security Administration,[1] | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Nancy A. Berryhill in this case. See Fed.R.Civ.P. 25(d).

**PROCEEDINGS**

On April 19, 2018, Plaintiff filed a Complaint seeking review of the denial of his applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 1). On September 17, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 20-21). On January 29, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 26). On November 13, 2019, the matter was transferred to the undersigned magistrate judge. (Docket Entry No. 28). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 29-30).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On June 20, 2014, Plaintiff, formerly employed as a security guard, dealer service technician and machine operator (see AR 225-29), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since August 1, 2012. (See AR 23, 195-98). On June 30, 2014, Plaintiff filed an application for Supplemental Security Income, alleging a disability since August 1, 2012. (See AR 23, 199-204).

On October 18, 2016, the Administrative Law Judge ("ALJ"), Donald Colpitts, heard testimony from Plaintiff (represented by counsel) and vocational expert Robin Generaux. (See AR 38-55). On January 27, 2017, the ALJ issued a decision denying Plaintiff's applications. (See AR 23-31). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since August 1, 2012. (AR 25). At step two, the ALJ determined that Plaintiff had the severe impairments of cardiac dysrhythmia and shortness of breath. (AR 25). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. (AR 25-26). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work.[3] (AR 26-29).

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a security guard and alternatively determined, based on Plaintiff's age, education, experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 29-30). Accordingly, the ALJ found that

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30-31).

The Appeals Council denied Plaintiff's request for review on March 19, 2018. (See AR 3-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[4]

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that (1) the ALJ erred in failing to provide clear and convincing reasons for finding Plaintiff's testimony not credible, and (2) the medical evidence submitted to the Appeals Council undermines the ALJ's decision. (See Joint Stip. at 4-10, 15-20).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address Plaintiff's second claim of error.

**A. The ALJ Did Not Properly Assess Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations. (See Joint Stip. at 4-10, 15). Defendant asserts that the ALJ provided valid reasons for finding Plaintiff not fully credible. (See Joint Stip. at 10-15).

1. Legal Standard

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his or her alleged symptoms, the ALJ

must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[5]

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Robbins v. Social Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not find that Plaintiff was malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility

---

[5] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's March 19, 2018 denial of Plaintiff's request for review. 20 C.F.R. § 404.1529, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

2. <u>The ALJ's Credibility Findings</u>

Plaintiff made the following statements in an Exertion Questionnaire dated September 15, 2014 (see AR 222-24):

> He lives with family in a mobile home. (AR 222).
>
> After about 1/2 of an hour of physical activity, he experiences weakness and shortness of breath. In the evening he walks approximately 1/4 of a mile (approximately 10 minutes), which leaves him tired and in need of rest. He does not climb stairs. He can lift and carry small furniture and small dogs throughout the day. He does not use any assistive devices. (AR 222-24).
>
> He often feels tired and fatigued. On an average day he drives children to school and does light housework. He does grocery shopping 3 to 4 times a week. He vacuums (30 minutes), mops (20 minutes), does laundry (1 hour) and does dishes (10 minutes). He drives a car, for up to 20 miles at one time. With respect to yard work, he picks up trash, waters, and rakes (but they make him tired). After doing housework/chores for 1/2 of an hour, he is tired and out of breath. Before becoming disabled, he was able to work hard for hours. (AR 222-24).
>
> He sleeps 7 to 8 hours. During the day he requires a nap or rest period of 1/2 to 1 hour. (AR 224).

He takes the following medications: Coreg, 25 mg, 2 times per day; Lisinopril, 10 mg, 1 time per day; Digoxin, 25 mg, 1 time per day; Eliquis, 5 mg, 2 times per day; and Cartia, 250 mg, 2 times per day. (AR 224).

Plaintiff gave the following testimony at the administrative hearing (see AR 40-53):

He lives with his wife, 22-year-old daughter and 18-year-old son in a mobile home. He received a GED. He is 6 feet, 5 inches tall and weighs 275 pounds (since 2012 his weight has fluctuated from 350 pounds to 260 pounds). He last worked in April 2010, when he was laid off due to his department being phased out. (AR 40-42).

He has been diagnosed with fibrillation. He has had three separate procedures (cardioversions) to try to correct it, but they have been unsuccessful. Doctors have told him about cardio ablation as an option, which he plans to pursue (it has not been scheduled). (AR 44-45).

He has arrythmia. Doctors are trying to control it with medication. (AR 51-52).

He has severe sleep apnea. He uses a CPAP machine, which helps him. (AR 45, 52).

He had a past left ankle injury. Residual symptoms from that injury are swelling and a crooked left ankle. He has chronic pain -- a dull ache in the ankle and sharp pains in the foot -- all the time. The pain causes him to limp and affects his ability to function. Too much time on his ankle is unbearable. For his ankle pain, he takes over-the-counter pain relief medication and uses a brace (wrapped). (AR 45-46)

In 2012, he experienced weakness and shortness of breath. After 2012, his symptoms got progressively worse. His shortness of breath happens more after physical activity but sometimes happens by itself. His shortness of breath causes him chest pain "[t]o some extent." His shortness of breath is controlled with medication "to some degree", but is not taken away completely. His fatigue increases with activity but is fairly constant. He gets shortness of breath when in public, and then has to stop what he is doing and sit down if possible. After a night's sleep he feels physically rested but still feels pretty tired. He needs to take two naps a day, one in the early afternoon and one in the early

8

evening, each for approximately 1/2 hour. (AR 42-44, 50, 52-53).

He can do chores such as emptying the trash, mopping the floor, and washing the dishes for 1/2 hour to 45 minutes before he has to rest for 1/2 hour to 45 minutes. The medication he takes cause him to be drowsy and fatigued. (AR 46-48).

His daily routine consists of getting up, getting the children off to school, taking the dogs out (opening the front door and letting them in the back yard), eating breakfast, watching a little television, doing a few chores, eating lunch, taking a nap, watching a little television, doing a couple of chores, preparing and eating dinner, taking the dogs out (walking them 2 to 3 times a week), taking another nap, staying up a little with his wife (who works during the day), and going to bed. His children help him with driving, lifting heavy things (he believes he probably can lift 25 pounds), gardening, and grocery shopping. When he goes out, he has to have somebody with him because of his heart condition. (AR 48-50, 52-53).

He does not smoke or use illegal drugs. He drinks a glass of beer three times a year. He does not have any hobbies. (AR 51).

The ALJ summarized Plaintiff's testimony as follows:

> The claimant makes the following allegations regarding the intensity, persistence, and limiting effects of his symptoms. The claimant testified that he suffers from weakness and shortness of breath, which have worsened since 2012. In addition, he suffers from fatigue, which increases with activity, and that he takes two thirty minute naps a day. Further, he stated that he has had various procedures for his heart issues, and that a cardio ablation may be performed. He stated that he uses a CPAP machine, and has swelling and constant pain in his ankle and foot that cause him to limp. The claimant testified that he has some pain with shortness of breath and was recently prescribed medication for arrhythmia. Finally, he testified that he can lift approximately twenty five pounds. Despite these allegations, he has admitted that he stopped working because he was laid off in 2010, and not because of any limitations stemming from his impairments. In addition, he can wash dishes, take out the trash, make sure his kids get off to school, prepare dinner, and help care for his dogs. Moreover, he stated that he uses over-the-counter medication for pain.

9

(AR 26-27).

After summarizing Plaintiff's testimony, the ALJ stated:

"After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. (AR 27). The ALJ then stated, "Turning to the objective medical evidence, the evidence cannot be fully reconciled with the level of pain and limiting effects of the impairments that the claimant has alleged." (AR 27). The ALJ proceeded to discuss the medical evidence in the record, including the opinions of the State Agency medical consultants, <u>see</u> AR 27-29, and concluded: "In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling pain and limitations. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above."

(AR 29).

### 3. The ALJ Failed To Provide Clear and Convincing Reasons for Discounting Plaintiff's Statements about His Limitations

As set forth below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms.[6]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)(quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, to the extent the ALJ discounted Plaintiff's testimony based on Plaintiff's admission that he was laid off work in 2010 (rather than in August 2012, the alleged disability onset date), this reason does not meet the clear and convincing standard. Plaintiff did not allege in his applications that he stopped working in 2010 because of symptoms and limitations resulting from his impairments. (See AR 195, 199). Plaintiff's testimony at the October 18, 2016 hearing - that he was laid off in 2010 because his department was phased out and that his

---

[6] The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision (see Joint Stip. at 14-15). See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) and Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

11

disability onset date was August 12, 2012 - was consistent with the information provided in the "Disability Report" submitted on September 3, 2014 in which Plaintiff alleged that he stopped working on March 1, 2010 because of "other reasons" not related to his conditions, namely, he was laid off from work, and that his condition became severe enough to keep him from working on August 1, 2012. (See AR 213-14).

Third, to the extent the ALJ discounted Plaintiff's testimony about his symptoms and limitations based on Plaintiff's ability to perform certain daily activities, such as washing dishes, taking out the trash, making sure his kids get off to school, preparing dinner, and helping care for his dogs, these reasons also fail to meet the clear and convincing standard. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, 157 F.3d at 722 ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). While a plaintiff's ability to spend a "*substantial part*" of his or her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit him or her, here, there is no evidence that Plaintiff was spending a substantial part of his day engaged in these activities or that the physical demands of such tasks as washing dishes, taking out the trash, making sure his kids get off to school, preparing dinner, and helping care for his dogs were transferable to a work setting. See Ghanim v. Colvin, 763 F.3d 1154,

12

1165 (9th Cir. 2014)("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial portion' of Ghanim's day, or were 'transferrable' to a work environment.").

It is not clear whether the ALJ considered Plaintiff's testimony about his limited abilities to perform such daily activities. In the Exertion Questionnaire, Plaintiff stated that he could only walk his dogs for approximately 10 minutes before he felt tired and needed to rest, and that it takes him 10 minutes to wash dishes. (AR 222). At the hearing, Plaintiff testified that he can do household chores such as emptying the trash, mopping the floor, and washing the dishes for no more than 30 to 45 minutes before needing to rest for approximately 30 to 45 minutes, (AR 45), he usually lets his dogs out by opening the front door and letting them in the back yard, and takes his dogs out for a walk 2 or 3 times a week, (AR 47-48) and that his children are old enough to take care of their needs on their own. (AR 49). Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with his testimony regarding his symptoms and limitations. See Reddick, 157 F.3d at 722; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Here, the ALJ did not ask Plaintiff how much time he spent engaged in his admitted daily activities or make any finding that Plaintiff's

13

ability to engage in such activities were transferable to and consistent with the duties he would be performing in a work environment. Thus, Plaintiff's admitted daily activities, without more, were not a legally sufficient reason to reject Plaintiff's subjective symptom testimony.

Fourth, to the extent the ALJ discounted Plaintiff's testimony based on the fact that Plaintiff was taking over-the-counter pain medication, see SSR 16-3p, 2017 WL 5180304, *7-*8 (the effectiveness of medication is one factor to be considered in evaluating the intensity, persistence and limiting effects of an individual's symptoms); Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."), this was also not a clear and convincing reason. Plaintiff's testimony concerning his use of over-the-counter medication was related solely to his ankle injury (AR 48) and not to his severe impairments of cardiac dysrhythmia and shortness of breath. Moreover, the medication that Plaintiff was taking for his severe impairments is not over-the-counter pain medication. (See AR 224, 275, 282, 297, 303, 306, 309, 332, 334, 339, 342, 351). In addition, Plaintiff testified that the medication he takes for his shortness of breath is not totally effective. At the hearing, Plaintiff testified that while his shortness of breath is controlled with medication "to some degree," the medication does not take away the shortness of breath completely. (AR 43).

Finally, while the ALJ also found that Plaintiff's testimony concerning his symptoms and limitations was not supported by the objective medical evidence, this factor cannot, by itself, support an

14

adverse finding about Plaintiff's testimony. See <u>Trevizo v. Berryhill</u>, 862 F.3d 987, 1001 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006)); <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998); <u>Blaine v. Berryhill</u>, 2018 WL 6243089, *4 (D. Mont. Nov. 29, 2018)("The ALJ's conclusion that [the claimant's] testimony would only be accepted to the extent that her hearing testimony was 'consistent with the objective medical ... evidence' is . . . the precise practice the Ninth Circuit prohibits."); <u>see</u> <u>also</u> SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. . . . However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the ALJ failed to provide legally permissible grounds for discounting Plaintiff's symptom testimony, the Court is unable to defer to the ALJ's credibility determination. <u>Cf. Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[7]

---

[7] The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the the medical evidence submitted to the Appeals Council (see Joint Stip. at 16-21). Because this matter is being
(continued...)

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 18, 2019

                                            /s/
                              ALKA SAGAR
               UNITED STATES MAGISTRATE JUDGE

---

[7] (...continued) remanded for further consideration, this issue should also be considered on remand.